# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| TARA CAPPS, as administrator<br>Of The Estate of MARK CAPPS, | ) | |
| | ) | **Case No. 3:23-cv-1141** |
| Plaintiff, | ) | |
| | ) | **Judge Crenshaw** |
| vs. | ) | |
| | ) | **Magistrate Judge Newbern** |
| METROPOLITAN GOVERNMENT<br>OF NASHVILLE-DAVIDSON<br>COUNTY, TENNESSEE, | ) | |
| | ) | **JURY DEMAND** |
| And | ) | |
| | ) | |
| ASHLEY COON, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO DEFENDANT METRO'S MOTION FOR SUMMARY JUDGMENT

Comes now the Plaintiff, by and through Counsel, responds to Defendant Metro's Motion for Summary Judgment (ECF 100, Motion). Plaintiff would show:

**A. Plaintiff acknowledges that the Court's ruling on the "excessive force" claim is binding under the "law of the case" doctrine**

Although Plaintiff argued at length in response to Defendant Coon's motion for summary judgment that the shooting of Mark Capps was an excessive use of force in violation of the Fourth Amendment, Plaintiff acknowledges that the Court ruled otherwise in granting Defendant Coons's motion. (ECF 66, Response; ECF 97, Memorandum Opinion). Because the Court so ruled, Plaintiff also acknowledges that the Court's prior ruling on this issue dictates that the Court must apply this finding to Metro's motion as well. *Puskas v. Delaware Cty., Ohio*, 56 F.4th 1088, 1099 (6th Cir. 2023) (municipality cannot be liable if no Fourth Amendment violation occurred); *Howe v. City of Akron*, 801 F.3d 718, 739 – 740 (6th Cir. 2015) (law of the

case doctrine). That said, for the record and for purposes of avoiding any potential waiver on appeal, Plaintiff reiterates the arguments and factual disputes that she cited in response to Coon's motion, reiterates the position that the shooting was a Fourth Amendment violation, and objects to the granting of Metro's motion. (ECF 66, Response; ECF 67, Response to Statement of Undisputed Material Facts; ECF 68, Statement of Additional Facts).

Notwithstanding the applicability of the "law of the case" doctrine as to this particular finding, for the reasons articulated *infra* and in light of Plaintiff's contemporaneously-filed motion to amend complaint, Metro's motion should be denied without prejudice subject to refiling at a later date after the further development of these proceedings. Fed. R. Civ. P. 56(d).

## B. Metro's *Arrington-Bey* arguments are both premature and wrong

Although Metro's actual motion argues only that the Court's Fourth Amendment finding regarding Defendant Coons precludes liability, Metro's memorandum includes an additional section in which it argues that Plaintiff cannot prevail on municipal liability claims here even if there were a Fourth Amendment violation. (ECF 101, Memo, Page ID # 1307 – 1311). Because Metro appears to only claim in its actual motion that it cannot be liable if Defendant Coons did not violate Mr. Capps's Fourth Amendment rights, this "Trojan Horse" has not been properly raised by Metro. However, to the extent that the Court construes Metro's motion as properly raising this issue, Plaintiff submits that these arguments are both wrong and premature. Thus, Plaintiff submits that under Rule 56(d)(1) the Court should deny Metro's motion without prejudice so that Plaintiff has developed a full record with which to establish municipal liability.

In support of this position, Plaintiff notes that Metro has not responded to Plaintiff's written discovery requests related to municipal liability, and a pleading amendment deadline has not even been set yet. (ECF 88, Case Management Order, Page ID # 1246). Thus, if the case

were to continue Plaintiff would anticipate taking substantial discovery pertinent to Metro's municipal liability, and potentially amend her complaint based on the fruits of that discovery. Therefore, because this part of Metro's motion would likely ultimately be moot, the Court should deny Metro's motion without prejudice at this time. Fed. R. Civ. P. 56(d).

However, in an abundance of caution, and purely as a prophylactic to avoid any potential waiver argument, Plaintiff also lays out a brief legal argument herein. Plaintiff briefly notes that her *current* allegations against Metro are a combination of improper training, failure to discipline, and failure to implement appropriate de-escalation policies and practices in the context of mental health emergencies. Thus, while Metro would like to "divide and conquer" Plaintiff's municipal liability theories into discrete categories, Plaintiff instead travels under the type of combination "hybrid" municipal liability theory that the Sixth Circuit recognized as valid in *Wright v. City of Euclid*, in which the Sixth Circuit relied on a combination of improper training practices and relatively vague proof of inadequate disciplinary practices to find liability. *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 880 – 882 (6th Cir. 2020) (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247 – 1248 (6th Cir. 1989)). Thus, as articulated in detail in Plaintiff's Second Amended Complaint, (ECF 50, Second Amended Complaint), which Metro answered rather than moving to dismiss, (ECF 57, Answer), Plaintiff alleges a combination of improper training, systemic failure to discipline in the context of illegal police shootings, and failure to implement de-escalation policies, practices, and training in the context of mental health emergencies. Based on the Sixth Circuit's holding in *Wright*, Plaintiff submits that this combination of affirmative misconduct and deficient inaction is more than sufficient to support a finding of Metro liability.

In addition, even without *Wright*'s "combo" approach Plaintiff could proceed on a pure "failure to discipline" claim. To establish liability under this theory, a plaintiff must show "a pattern of inadequate investigation of similar claims." *Stewart v. City of Memphis*, 2019 U.S. Dist. LEXIS 12698, at * 35 (W.D. Tenn. 2019) (citing *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)); *see also Cretacci v. Hare*, 2022 U.S. App. LEXIS 32537, at *22 – 23 (6th Cir. 2022). Thus, even without the *Wright*-based theory the Sixth Circuit has long put municipalities on notice that a systemic failure to discipline officers for excessive force use will subject them to liability. *David v. City of Bellevue*, 706 Fed. Appx. 847, 853 (6th Cir. 2017) (citing *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996); *Cretacci*, 2022 U.S. App. LEXIS 32537, at *22 – 23; *Wright*, 962 F.3d at 882. Of course, Metro has not yet provided discovery in relation to Plaintiff's allegations, and so any factual consideration regarding this type of theory would be fundamentally premature. Fed. R. Civ. P. 56(d).

Plaintiff also notes that she has not "abandoned" her claim for inadequate mental health-related policies and training. The arguments that Plaintiff made in response to Defendant Coon's motion for summary judgment were the arguments pertinent to Defendant Coon's liability, not the arguments pertinent to Metro's liability. Thus, if discovery were to proceed such that Plaintiff could marshal evidence to support this claim, Plaintiff would argue that the evidence supports a claim for Metro liability for having failed to implement mental health de-escalation policies to address the long "clearly established" requirement that officers exercise additional restraint in the use of deadly force when dealing with mentally ill subjects. *Palma v. Johns*, 27 F.4th 419, 437 (6th Cir. 2022); *also Abdi v. Karnes*, 556 F.Supp.2d 804, 811 – 819 (S.D. Ohio 2008) (citing *Russo v. Cincinnati*, 953 F.2d 1036 (6th Cir. 1992)) ("The decision in *Russo*, which is binding on this Court, established that failure to adequately train officers with respect to the use of force on

mentally disturbed persons resulting from deliberate indifference to the rights of such persons may serve as a basis for a claim under § 1983.")

Finally, as discussed in more detail *infra*, Plaintiff is contemporaneously filing to amend her complaint to add a new legal count against Metro for its SWAT team's unreasonable execution of the warrant in this case. Plaintiff's *Monell* theory for that claim is very straightforward, because deposition testimony has already established that the SWAT deployment tactic used in this case was approved up the MNPD "chain of command" prior to this operation, as well as the fact that SWAT regularly used this deployment tactic. (Ex. A, <u>Frost Report</u>; Ex. B, <u>Frost Depo</u>). Based on that new claim, the other issues discussed herein, and the fact that Plaintiff may well amend yet again in the future once discovery has further proceeded, Plaintiff respectfully submits that the Court should deny Metro's motion as to this issue without prejudice. Fed. R. Civ. P. 56(d).

### C. Metro can be held liable for its unreasonable execution of the arrest warrant

Lastly, contemporaneously with the filing of this response Plaintiff is filing a motion to amend her complaint, to add an additional Fourth Amendment-based claim against Metro for unreasonably executing the arrest warrant in this case. Metro's SWAT team cut through the back fence, placed demolition charges on the back door, and began to place demolition charges on the front door all *prior* to announcing their presence as police to Mr. Capps. (Ex. A, <u>Frost Report</u>; Ex. B, <u>Frost Depo</u>; Ex. D, <u>Coon Depo</u>; Ex. E, <u>Holland Depo</u>). This tactic was a standard MNPD SWAT practice, and was also specifically approved up the MNPD "chain of command" in this case prior to SWAT's deployment. *Id.* Moreover, tactical choice was made without any consideration for Plaintiff's mental health condition, even though Mrs. Capps and Ms. Acuff informed MNPD about Capps's depression and mental health history when they went to

Hermitage Precinct. (Ex. C, <u>Lancaster Depo</u>). Plaintiff's proposed Third Amended Complaint alleges that Metro's SWAT deployment tactic violated the Fourth Amendment obligation that police "knock and announce" their presence in the absence of an exigent circumstance. By cutting through the back fence, placing explosives on the back door, and placing explosives on the front door, the SWAT team unreasonably triggered the encounter with Mr. Capps at his front door which led to his swift, untimely, and unnecessary death.

The Sixth Circuit has long recognized that even if a plaintiff's "excessive force" claim fails, there may be a separate Fourth Amendment-based claim where the unreasonable execution of a warrant proximately causes death or other harm. *Bletz v. Gribble*, 641 F.3d 743, 752 (6th Cir. 2011); *Dickerson v. McClellan*, 101 F.3d 1151, 1158 – 1160 (6th Cir. 1996) ("knock and announce" required unless excused by exigent circumstances).[1] Thus, a "knock and announce" violation that results in a police shooting has long been analyzed as a separate claim from the "excessive force" claim. *Id.* In ***Rush v. City of Mansfield***, Circuit Judge O'Malley sitting by interchange stated:

> It is this basic principle of proximate cause that ***Hudson*** [*v. Michigan*] applies: "an unannounced entry may provoke violence in supposed self-defense by the surprised resident." ***Hudson***, 547 U.S. at 594, 126 S.Ct. 2159. The rule is simple: when a constitutional violation occurs, liability attaches for harm that is the direct and proximate result of that constitutional violation, but only for such harms. Applying that principle to this case, then, if the Defendants failed to knock-and-announce their presence as required by the Fifth Amendment, or otherwise committed a constitutional violation when executing the warrant, and if that failure was the proximate cause of Gilbert Rush's death, the Plaintiffs may recover under § 1983 for that harm.

---

[1] The Sixth Circuit in *Dickerson* recognized three exceptions to the knock and announce rule:

> (1) the persons within already know of the officers' authority and purpose; (2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or (3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or the destruction of evidence.

*Id*. at 1159. None of these exceptions are applicable here. The SWAT team specially hid their presence from Mr. Capps. The SWAT team knew that no one other than Mr. Capps was inside the home. Finally, Mr. Capps was not engaged in the destruction of evidence.

6

*Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 857 (N.D. Ohio 2011) (citing *Hudson v. Michigan*, 547 U.S. 586, 594 (2006)).

In *Rush*, law enforcement officers shot and killed a man who was holding a shotgun pointed at the officers. While no claim was made for the shooting itself, the plaintiffs in that case brought claims against the municipality and others for unreasonably serving a warrant because they failed to announce and identify themselves as law enforcement officers prior to initiating the search. The district court in *Rush* found that even if there was no constitutional violation for the actual shooting, the manner of the service of the warrant could, nonetheless, be grounds for liability under § 1983 if the warrant was executed in an unreasonable manner and the unreasonable warrant execution proximately caused the shooting. Likewise, the municipality could be liable for such unreasonable execution based on its policies, customs and practices or through ratification through a failure to investigate. *Id.* at 872 – 873.

Admittedly, as the Court noted in its ruling on Coon's summary judgment motion Metro's officers had not yet forcibly entered the home. However, by cutting through the back fence, setting explosives on the back door, and beginning to set explosives on the front door, the SWAT team had definitely penetrated the "curtilage" of the home, an area which is as protected by the Fourth Amendment as is the inside of the home itself. *Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409, 1414 - 1415 (2013) ("Here there is no doubt that the officers entered it: The front porch is the classic exemplar of an area adjacent to the home and 'to which the activity of home life extends.'"); (Ex. A, <u>Frost Report</u>; Ex. B, <u>Frost Depo</u>; Ex. D, <u>Coon Depo</u>; Ex. E, <u>Holland Depo</u>). The SWAT team made these intrusions as stealthily as they could, making every effort to prevent Mr. Capps from knowing that they were moving in. *Id*. In the midst of SWAT setting the explosives on Mr. Capps's front door, Mr. Capps opened the door and was shot.

Plaintiff contends that the SWAT team was obligated to announce themselves to Mr. Capps – which they could have done either through making their presence known and using a loudspeaker, or by calling his cell phone number (which they had) – rather than cutting through his back fence, surrounding his front and back doors with heavily armed SWAT officers, placing explosive charges on his back door, and placing explosive charges on his front door. *See Terebesi v. Torreso*, 764 F.3d 217, 242 – 243 (2nd Cir. 2014) (suggesting based on Supreme Court precedent that breaking a window may be sufficient to trigger "knock and announce" requirement) (citing *United States v. Ramirez*, 523 U.S. 65, 69 – 71 (1998)); *United States v. Morris*, 436 F.3d 1045, (8th Cir. 2006) (breach of outer screen door violated "knock and announce" requirement); *Allen v. Muskogee*, 119 F.3d 837, 840 – 841 (10th Cir. 1997) (affirming denial of summary judgment in police shooting case where disputed facts revolved around whether police had provoked the suspect's threatening actions through the officers' aggressive tactics); *Estate of Starks v. Enyert*, 5 F.3d 230, 233 – 235 (7th Cir. 1993) (affirming denial of summary judgment where disputed facts suggested that officer may have created the need to use deadly force by placing himself in harm's way); *Betton v. Belue*, 942 F.3d 184, 194 (4th Cir. 2019)(upholding district court's denial of summary judgment and finding that officer's failure to identify rendered subsequent shooting of armed resident unreasonable); *Cooper v. Sheehan*, 735 F.3d 153, 159 – 160 (4th Cir. 2013) (officers had obligation to announce themselves before using deadly force after drawing suspect out of his home by rapping on window).

In *Hudson v. Michigan*, the Supreme Court recognized that one of the key rationales for the "knock and announce" rule "is the protection of human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident." **Hudson v. Michigan**, 547 U.S. 586, 594 (2006). Thus, because the Supreme Court has long put

law enforcement and municipalities on notice that failure to announce can provoke violence, it was foreseeable that SWAT's plan of stealthily setting explosives on the doors prior to announcing their presence would result in the need for deadly force. This is especially true when dealing with someone who is known to be mentally disturbed, such as Mr. Capps. Moreover, because even the limited record in this case makes clear that Metro has an established practice of having its SWAT team use this particular tactic to serve warrants, and that the MNPD "chain of command" approved the use of this tactic in this particular case, the Third Amended Complaint contains a more than sufficient basis to meet the Rule 12 "plausibility" standard for holding Metro liable under established *Monell* principles. (Ex. A, <u>Sgt. Frost Report</u>; Ex. B, <u>Sgt. Frost Depo Excerpt</u>); *Monistere v. City of Memphis*, 115 Fed. Appx. 845, 851 – 853 (6th Cir. 2004) (functional delegation by municipality of final policymaking authority to police lieutenant could make the lieutenant's decision a sufficient basis for municipal liability); *Meeks v. City of Detroit*, 727 Fed. Appx. 171, 180 – 181 (6th Cir. 2018) (municipal liability can be based on a "persistent and widespread" custom); *Wright v. City of Euclid, Ohio*, 962 F.3d 852 (6th Cir. 2020) (municipal liability can be based on a combination of improper training and systemic failure to discipline officers for committing constitutional violations).

Plaintiff's prior complaints included a claim against Metro for "Maintaining policies, training, and practice customs that are deliberately indifferent to the risk that MNPD officers will escalate to the use of deadly force during encounters with subjects experiencing mental health emergencies." (See Paragraph 204(b) of the Second Amended Complaint). Metro's motion, however, does not encompass this claim. Likewise, Plaintiff is contemporaneously seeking to raise this claim as a separate legal count. The deadline to amend in this case has not even been set yet, much less passed, and discovery as between Plaintiff and Metro is still in its relative

infancy.[2]  Therefore, based on the well-recognized principles articulated by the Sixth Circuit in cases such as *Carter v. Ford Motor Co.*, Plaintiff is still well within her rights to add a new legal claim, especially where Metro has long been on notice of the factual basis for that claim. *Carter v. Ford Motor Co.*, 561 F.3d 562, 565 (6th Cir. 2009).  In *Carter*, the Sixth Circuit surveyed the procedural landscape for a party's right to add additional legal claims up to the point of summary judgment briefing.  "The issue in a challenge to the sufficiency of a pleading is notice."  *Carter v. Ford Motor Co.*, 561 F.3d 562, 565 (6th Cir. 2009).  The Court further explained that while the complaint is the starting point in determining notice, "where language in a complaint is ambiguous, [the Sixth Circuit] has used a 'course of proceedings' test to determine whether Defendants have received notice of the plaintiff's claims." *Id.* at 566.  Finding that the complaint in *Carter* was "at best, ambiguous" as to whether it encompassed the claim in question, the Sixth Circuit went on to find that the plaintiff's deposition testimony, which specifically disavowed the claim in question, demonstrated that the claim truly was never part of the case until the *Carter* plaintiff's summary judgment response.  *Id.* at 566 – 567.  The Court then discussed the fact that the plaintiff could have filed to amend her deposition testimony prior to the summary judgment briefing, in order to put the defendants on notice.  *Id.* at 567 – 568.  Finally, the Court noted two separate Sixth Circuit cases in which raising a new claim *in the summary judgment response* had been held to constitute sufficient notice, but distinguished those cases because the plaintiffs in them had not given an "express disavowal of the very claim the party attempted to raise in summary judgment."  *Id.* (citing *Vencor v. Standard Life & Accident Ins. Co.*, 317 F.3d 629, 642 n. 11 (6th Cir. 2003) and *Howington v. Quality Rest. Concepts, LLC*, 298 Fed. App'x 436, 442 n.6 (6th Cir. 2008)).  The Court then discussed *Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir.

---

[2] The parties originally focused the litigation on the claim against Defendant Coon and whether Defendant Coon was entitled to qualified immunity.

2008), in which statements made during the depositions "demonstrated that both sides understood" that the case did include claims "not explicitly set forth in the complaint." *Id.* at 569.

The holdings and case law cited in *Carter* make clear several key principles. First, the Sixth Circuit's "course of proceedings test" takes deposition testimony into account in terms of assessing whether a party has sufficiently put another party on notice of a legal claim. Second, depending on the particulars of the case, and as long as there is no express disavowal of claims during the discovery process, articulating claims for the first time in a response to summary judgment may in fact convey sufficient notice to make up for deficiencies in a complaint. *Vencor*, 317 F.3d at 642 n. 11; *Howington*, 298 Fed. App'x at 442 n.6. Finally, if a plaintiff has articulated claims during a deposition it will be difficult for a defendant to claim lack of notice during subsequent summary judgment litigation. *Harris*, 513 F.3d at 516.

Given the relatively undeveloped status of the litigation between Plaintiff and Metro in this case, Plaintiff is well within her rights to add an additional legal count at this time. Therefore, in light of Plaintiff's proposed new additional claim Metro's instant motion should be denied without prejudice, subject to the further proceedings in this case. Fed. R. Civ. P. 56(d).


<u>**CONCLUSION**</u>

Based on the foregoing, Plaintiff respectfully submits that Metro's motion should be denied without prejudice as premature.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
7000 Executive Center Drive, Suite 240
Brentwood, TN 37027
T: (615) 891-3901 / F: (615) 229-6387
E: kyle@relentlesslaw.com

*s/ James Bryan Moseley*
James Bryan Moseley, BPR 021236
237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
(615) 254-0140
Bryan.moseley@moseleylawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on **March 20, 2025**, the Plaintiff's **Response to Defendant Metro's Motion for Summary Judgment** was filed electronically with the Court's electronic filing system. Notice of this filing will be electronically served by operation of the Court's electronic filing system on **Melissa Roberge and Will Ayers, Counsels for Defendants,** at melissa.roberge@nashville.gov, and Will.Ayers@nashville.gov, and **Bryan Moseley**, co-counsel for Plaintiff, at bryan.moseley@moseleylawfirm.com.

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953