IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| TARA CAPPS, as administrator Of The Estate of MARK CAPPS, | ) ) ) | |
| | ) | Case No. 3:23-cv-1141 |
| Plaintiff, | ) ) | |
| | ) | Judge Crenshaw |
| vs. | ) ) | |
| | ) | Magistrate Judge Newbern |
| METROPOLITAN GOVERNMENT OF NASHVILLE-DAVIDSON COUNTY, TENNESSEE, | ) ) ) | |
| | ) | JURY DEMAND |
| And | ) ) | |
| ASHLEY COON, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO AMEND COMPLAINT

Comes now the Plaintiff, by and through Counsel, and submits this memorandum of law in support of her motion to file her proposed **Third Amended Complaint**.

### A. Factual and Procedural History

Mr. Mark Capps was shot and killed by MNPD's "SWAT" team on January 5, 2023. On October 27, 2023, Plaintiff filed her original Complaint, naming both the Metro Nashville government and Ashley Coon, the SWAT sergeant who shot and killed Mr. Capps. (ECF 1, Complaint). Defendant Metro swiftly moved to dismiss the claims against it, arguing that the complaint was insufficient to allege plausible *Monell* liability, which Plaintiff responded to by filing a First Amended Complaint. (ECF 8, Motion; ECF 17, Motion to Amend Complaint). On February 7, 2024, Metro filed a motion to dismiss the FAC on the same types of grounds. (ECF 35, Motion). Plaintiff filed a response to Metro's motion timely on April 12, 2024, and then after the Court advised that new factual allegations needed to be raised in a motion to amend filed a

proposed Second Amended Complaint. (ECF 45, Response; ECF 46, Order; ECF 48, Motion to Amend). The Court granted Plaintiff's motion to amend, and the Second Amended Complaint became the operative complaint on April 24, 2024. (ECF 49, Order).

In the meantime, Defendant Coon moved for summary judgment based on qualified immunity, which the Court ultimately granted on February 25, 2025. (ECF 24, Motion; ECF 98, Order). During the pendency of Coon's motion the parties took limited discovery that was pertinent to the excessive force claim against Coon, and served discovery requests as between Plaintiff and Metro. However, in light of the Court's February 25, 2025 rulings and subsequent case management considerations, neither Metro nor Plaintiff have served responses to each other's discovery requests.

### B. Argument

In considering a motion to amend, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *See Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628 (W.D. Ky. 2018). Generally speaking, district courts should generally grant leave to amend absent undue delay or dilatory motive. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553 (2010). Other grounds for denial include bad faith, lack of notice to the opposing party, undue prejudice to the opposing party, or futility. *Cutsinger v. Humphrey*, 2015 U.S. Dist. LEXIS 150191, *4 – 5 (E.D. Mich. 2015).

Here, none of these factors are present. The thrust of Plaintiff's proposed Third Amended Complaint is to add an additional legal count against Defendant Metro (not Defendant Coon) for unreasonable execution of the arrest warrant in this case, and some additional details at ¶ 162 *et seq* to support that count. Notably, many of the factual circumstances that support the count are already present in the Second Amended Complaint, and are already familiar to the

parties from the record thus far in this case. (Ex. A, Sgt. Frost Report; Ex. B, Sgt. Frost Depo Excerpt; Ex. C, Lancaster Depo Excerpt; Ex. E, Holland Depo Excerpt). Thus, while the Third Amended Complaint does frame these facts in a slightly more detailed and focused way, the parties have long been on notice of the core facts underlying this claim – MNPD's choice to deploy SWAT to execute this warrant, the tactics with which SWAT executed the arrest warrant, Metro's prior custom of having SWAT execute warrants with this particular tactic, and the fact that in this particular case MNPD's "chain of command" approved SWAT's use of this particular warrant execution tactic. *Id.* Thus, while Plaintiff expects that discovery will be of assistance in further developing the supporting facts for this claim, the core facts are already in the record.

Plaintiff's Second Amended Complaint included a claim against Metro for it "Maintaining policies, training, and practice customs that are deliberately indifferent to the risk that MNPD officers will escalate to the use of deadly force during encounters with subjects experiencing mental health emergencies." (See Paragraph 204(b) of the Second Amended Complaint). Now, Plaintiff is seeking to focus this claim as a separate legal count for Metro's unreasonable choice and manner of deploying SWAT to serve this arrest warrant on a mentally fragile Mr. Capps. In terms of adding an additional legal count, while admittedly it might have been helpful to spell this count out earlier in the case Plaintiff is well within her rights to reframe the legal case in this way at this stage in the proceedings. There is no statute of limitations issue, because this legal count derives from the same core factual circumstances and therefore "relates back" to the original filing of the complaint. Fed. R. Civ. P. 15(c)(1)(B). Meanwhile, this case does not even have a deadline yet, much less an expired one. (ECF 88, Case Management Order, Page ID # 1246). In terms of discovery, written discovery requests were exchanged between

Plaintiff and Metro in 2024, but no party has responded to discovery yet. Thus, under the case law Plaintiff has ample opportunity yet to fairly put Metro on notice.

In *Carter v. Ford Motor Co.*, the Sixth Circuit surveyed the procedural landscape for a party's right to add additional legal claims up to the point of summary judgment briefing. "The issue in a challenge to the sufficiency of a pleading is notice." *Carter v. Ford Motor Co.*, 561 F.3d 562, 565 (6th Cir. 2009). The Court further explained that while the complaint is the starting point in determining notice, "where language in a complaint is ambiguous, [the Sixth Circuit] has used a 'course of proceedings' test to determine whether Defendants have received notice of the plaintiff's claims." *Id.* at 566. Finding that the complaint in *Carter* was "at best, ambiguous" as to whether it encompassed the claim in question, the Sixth Circuit went on to find that the plaintiff's deposition testimony, which specifically disavowed the claim in question, demonstrated that the claim truly was never part of the case until the *Carter* plaintiff's summary judgment response. *Id.* at 566 – 567. The Court then discussed the fact that the plaintiff could have filed to amend her deposition testimony prior to the summary judgment briefing, in order to put the defendants on notice. *Id.* at 567 – 568. Finally, the Court noted two separate Sixth Circuit cases in which raising a new claim *in the summary judgment response* had been held to constitute sufficient notice, but distinguished those cases because the plaintiffs in them had not given an "express disavowal of the very claim the party attempted to raise in summary judgment." *Id.* (citing *Vencor v. Standard Life & Accident Ins. Co.*, 317 F.3d 629, 642 n. 11 (6th Cir. 2003) and *Howington v. Quality Rest. Concepts, LLC*, 298 Fed. App'x 436, 442 n.6 (6th Cir. 2008)). The Court then discussed *Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir. 2008), in which statements made during the depositions "demonstrated that both sides understood" that the case did include claims "not explicitly set forth in the complaint." *Id.* at 569.

The holdings and case law cited in *Carter* make clear several key principles. First, the Sixth Circuit's "course of proceedings test" takes deposition testimony into account in terms of assessing whether a party has sufficiently put another party on notice of a legal claim. Second, depending on the particulars of the case, and as long as there is no express disavowal of claims during the discovery process, articulating claims for the first time in a response to summary judgment may in fact convey sufficient notice to make up for deficiencies in a complaint. *Vencor*, 317 F.3d at 642 n. 11; *Howington*, 298 Fed. App'x at 442 n.6. Finally, if a plaintiff has articulated claims during a deposition it will be difficult for a defendant to claim lack of notice during subsequent summary judgment litigation. *Harris*, 513 F.3d at 516.

Given that a plaintiff can add legal claims as late as in a deposition, or sometimes even in a summary judgment response, Plaintiff here is well within her rights to add Count 2 against Metro. This is especially the case given that most of the proceedings thus far have revolved around the expedited resolution of Coon's qualified immunity motion, with the litigation between Metro and Plaintiff largely sidelined during this process.[1] Thus, there is absolutely no cognizable prejudice to Metro from the proposed amendment. *Cutsinger v. Humphrey*, 2015 U.S. Dist. LEXIS 150191, *4 – 5 (discussing the types of circumstances that demonstrate undue prejudice, such as discovery having already been completed). Moreover, although "**repeated failure to cure deficiencies by amendments previously allowed**" may constitute grounds for denial of leave to amend, this is not warranted in this circumstance because the prior amendments were focused on alleged deficiencies raised by Metro regarding *Monell*-type issues. *Mourad v. Marathon Petro. Co. LP*, 654 Fed. Appx. 792, 801 (6th Cir. 2016) (citing *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). Furthermore, there is no "bad faith" here –

---

[1] In this regard, Plaintiff notes that she served her original written discovery request on Metro back on March 8, 2024, but then permitted Metro to delay responding while Coons's qualified immunity motion was resolved.

rather, the proposed amendment is based largely on documented, known facts that Metro is already well on notice of. (Ex. A, Sgt. Frost Report; Ex. B, Sgt. Frost Depo Excerpt; Ex. C, Lancaster Depo Excerpt).

Finally, the proposed amendments are not "futile." While Plaintiff does not concede that the Court's conclusions regarding Plaintiff's excessive force claims are correct, even assuming *arguendo* that Coon's use of force was not excessive the mere fact that a deadly use of force is constitutional at the moment it is used does not preclude liability if a prior unconstitutional act proximately caused the need to use such force. *Bletz v. Gribble*, 641 F.3d 743, 752 (6th Cir. 2011); *Dickerson v. McClellan*, 101 F.3d 1151, 1158 – 1160 (6th Cir. 1996) ("knock and announce" required unless excused by exigent circumstances).[2] Thus, an unreasonable warrant execution violation that results in a police shooting has long been analyzed as a separate claim from the "excessive force" claim, as a separate basis for potential liability. *Id.* In **Rush v. City of Mansfield**, Circuit Judge O'Malley sitting by interchange stated:

> It is this basic principle of proximate cause that **Hudson** [*v. Michigan*] applies: "an unannounced entry may provoke violence in supposed self-defense by the surprised resident." **Hudson**, 547 U.S. at 594, 126 S.Ct. 2159. The rule is simple: when a constitutional violation occurs, liability attaches for harm that is the direct and proximate result of that constitutional violation, but only for such harms. Applying that principle to this case, then, if the Defendants failed to knock-and-announce their presence as required by the Fifth Amendment, or otherwise committed a constitutional violation when executing the warrant, and if that failure was the proximate cause of Gilbert Rush's death, the Plaintiffs may recover under § 1983 for that harm.

---

[2] The Sixth Circuit in *Dickerson* recognized three exceptions to the knock and announce rule:

> (1) the persons within already know of the officers' authority and purpose; (2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or (3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or the destruction of evidence.

*Id*. at 1159. None of these exceptions are applicable here. The SWAT team specially hid their presence from Mr. Capps. The SWAT team knew that no one other than Mr. Capps was inside the home. Finally, Mr. Capps was not engaged in the destruction of evidence.

***Rush v. City of Mansfield***, 771 F. Supp. 2d 827, 857 (N.D. Ohio 2011) (citing *Hudson v. Michigan*, 547 U.S. 586, 594 (2006)).

In ***Rush***, law enforcement officers shot and killed a man who was holding a shotgun pointed at the officers. While no claim was made for the shooting itself, the plaintiffs in that case brought claims against the municipality and others for unreasonably serving a warrant because they failed to announce and identify themselves as law enforcement officers prior to initiating the search. The district court in ***Rush*** found that even if there was no constitutional violation for the actual shooting, the manner of the service of the warrant could, nonetheless, be grounds for liability under § 1983 if the warrant was executed in an unreasonable manner and the unreasonable warrant execution proximately caused the shooting. Likewise, the municipality could be liable for such unreasonable execution based on its policies, customs and practices or through ratification through a failure to investigate. *Id*. at 872 – 873.

Admittedly, as the Court noted in its ruling on Coon's summary judgment motion Metro's officers had not yet forcibly entered the home when Mr. Capps came to the front door. However, by cutting through the back fence, setting explosives on the back door, and beginning to set explosives on the front door, the SWAT team had definitely penetrated the "curtilage" of Mr. Capps's home, an area which is as protected by the Fourth Amendment as is the inside of the home itself. (Ex. A, <u>Frost Report</u>; Ex. B, <u>Frost Depo</u>; Ex. D, <u>Coon Depo</u>; Ex. E, <u>Holland Depo</u>); ***Florida v. Jardines***, 569 U.S. 1, 133 S.Ct. 1409, 1414 - 1415 (2013) ("Here there is no doubt that the officers entered it: The front porch is the classic exemplar of an area adjacent to the home and 'to which the activity of home life extends.'"). The SWAT team made these intrusions as stealthily as they could, making every effort to prevent Mr. Capps from knowing that they were moving in and never announcing themselves as "Police!" *Id*. By moving in on both the

front and back doors and setting explosive charges on them, the team effectively surrounded Mr. Capps with what would have appeared to anyone – and certainly to a man suffering from a known[3] mental health emergency – to be a very terrifying invasion force. While the SWAT was in the process of setting the explosives on Mr. Capps's front door, Mr. Capps opened the door and was shot.

Plaintiff contends that the SWAT team was obligated to announce themselves to Mr. Capps – which they could have done either through making their presence known and using a loudspeaker, or by calling his cell phone number (which they had) – rather than cutting through his back fence, surrounding his front and back doors with heavily armed SWAT officers, placing explosive charges on his back door, and placing explosive charges on his front door. *See Terebesi v. Torreso*, 764 F.3d 217, 242 – 243 (2nd Cir. 2014 (suggesting based on Supreme Court precedent that breaking a window may be sufficient to trigger "knock and announce" requirement) (citing *United States v. Ramirez*, 523 U.S. 65, 69 – 71 (1998)); *United States v. Morris*, 436 F.3d 1045, (8th Cir. 2006) (breach of outer screen door violated "knock and announce" requirement); *Allen v. Muskogee*, 119 F.3d 837, 840 – 841 (10th Cir. 1997) (affirming denial of summary judgment in police shooting case where disputed facts revolved around whether police had provoked the suspect's threatening actions through the officers' aggressive tactics); *Estate of Starks v. Enyert*, 5 F.3d 230, 233 – 235 (7th Cir. 1993) (affirming denial of summary judgment where disputed facts suggested that officer may have created the need to use deadly force by placing himself in harm's way); *Betton v. Belue*, 942 F.3d 184, 194 (4th Cir. 2019)(upholding district court's denial of summary judgment and finding that officer's failure to identify rendered subsequent shooting of armed resident unreasonable); *Cooper v. Sheehan*, 735

---

[3] While Officer Lancaster seemed to largely dismiss what Mrs. Capps and Ms. Acuff had told him about Mr. Capps suffering from depression, the victims certainly made MNPD aware of it. (Ex. C, Lancaster Depo, 26:14 – 29:03).

F.3d 153, 159 – 160 (4th Cir. 2013) (officers had obligation to announce themselves before using deadly force after drawing suspect out of his home by rapping on window).

In *Hudson v. Michigan*, the Supreme Court recognized that one of the key rationales for the "knock and announce" rule "is the protection of human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident." **Hudson v. Michigan**, 547 U.S. 586, 594 (2006). Thus, because the Supreme Court has long put law enforcement and municipalities on notice that failure to announce can provoke violence, it was foreseeable that SWAT's plan of stealthily setting explosives on the doors prior to announcing their presence would result in the need for deadly force. Moreover, because even the limited record in this case makes clear that Metro has an established practice of having its SWAT team use this particular tactic to serve warrants, and that the MNPD "chain of command" approved the use of this tactic in this particular case, the Third Amended Complaint contains a more than sufficient basis to meet the Rule 12 "plausibility" standard for holding Metro is liable under established *Monell* principles. (Ex. A, Sgt. Frost Report; Ex. B, Sgt. Frost Depo Excerpt); *Monistere v. City of Memphis*, 115 Fed. Appx. 845, 851 – 853 (6th Cir. 2004) (functional delegation by municipality of final policymaking authority to police lieutenant could make the lieutenant's decision a sufficient basis for municipal liability); *Meeks v. City of Detroit*, 727 Fed. Appx. 171, 180 – 181 (6th Cir. 2018) (municipal liability can be based on a "persistent and widespread" custom); *Wright v. City of Euclid, Ohio*, 962 F.3d 852 (6th Cir. 2020) (municipal liability can be based on a combination of improper training and systemic failure to discipline officers for committing constitutional violations).

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that she be permitted to file her proposed Third Amended Complaint.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Relentless Advocacy, PLLC
7000 Executive Center Drive, Suite 240
Brentwood, TN 37027
T: (615) 891-3901 / F: (615) 229-6387
E: kyle@relentlesslaw.com

*s/ James Bryan Moseley*
James Bryan Moseley, BPR 021236
237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
(615) 254-0140
Bryan.moseley@moseleylawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on **March 20, 2025**, the Plaintiff's **Memo in Support of Motion to Amend Complaint** was filed electronically with the Court's electronic filing system. Notice of this filing will be electronically served by operation of the Court's electronic filing system on **Melissa Roberge and Will Ayers, Counsels for Defendants,** at melissa.roberge@nashville.gov, and Will.Ayers@nashville.gov, and **Bryan Moseley**, co-counsel for Plaintiff, at bryan.moseley@moseleylawfirm.com.

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953