IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TARA CAPPS, as administrator of the ESTATE OF MARK CAPPS, | ) ) ) |
| Plaintiff, | ) No. 3:23-cv-001141 ) |
| v. | ) Judge Crenshaw ) Magistrate Judge Newbern |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, *et al.*, | ) ) JURY DEMAND ) ) |
| Defendants. | ) |

## METRO NASHVILLE AND ASHLEY COON'S RESPONSE TO PLAINTIFF'S MOTION TO AMEND

Litigants should respect the Court's time and resources. *Ciccio v. Smiledirectclub*, No. 3:19-CV-00845, 2021 WL 3291787, at *3 (M.D. Tenn. August 2, 2021). Plaintiff's requested amendment does neither. In each version of her complaint, including the proposed third amendment before the court, Plaintiff represented that her husband, Mark Capps, did not have a gun when he opened the door on members of the Metro Nashville Police Department ("MNPD") SWAT team based on "information and belief." There never was any information or belief to support that allegation. Plaintiff made it anyway, which has led to 18 months and counting of litigation. Now, after the Court has expended its time and resources to answer the sole constitutional question presented by the operative complaint, Plaintiff wants a do-over.

While amendments should usually be granted when "justice so requires," in this case, justice requires that the amendment be denied. Plaintiff seeks an eleventh-hour amendment based on facts known to her for two years, based on a theory that she only dreamed up after she lost summary judgment. All relevant equitable factors warrant denying the amendment.

First, it is untimely because it was filed after a decision on the merits, without any explanation for why the amendment was delayed.

Second, the purpose of the amendment is to undermine the Court's ruling, which suggests bad faith. Plaintiff wants to add a Fourth Amendment claim based on officers' failure to announce their presence before entering Mr. Capps's property and argue that such failure "proximately caused" the use of deadly force. But the Court already considered that the officers did not announce their presence when it granted Sgt. Coon's motion for summary judgment.

Third, Sgt. Coon will be prejudiced by the delay in a final judgment, and it would subject Metro Nashville to extensive, burdensome discovery in a case that would be dead on arrival.

Fourth, the proposed amendment would not survive a motion to dismiss. Plaintiff's theory is that the Fourth Amendment required officers to "announce themselves" before they entered any part of Mr. Capps's property. It does not.

Simply put, the proposed amendment should be denied because it is late, in bad faith, prejudices the Defendants, and is futile.

## FACTS

Plaintiff no longer writes on a blank slate about what happened. In ruling on summary judgment, the Court found the following facts undisputed:

> On January 5, 2023, Metropolitan Nashville Police Department ("MNPD") Officer Patrick Lancaster ("Officer Lancaster") swore out warrants for Mr. Capps's arrest. (Doc. No. 67 ¶ 1). Officer Lancaster alleged one count of aggravated assault and one count of aggravated kidnapping to Mrs. Capps and one count of aggravated assault and one count of aggravated kidnapping to Mollie Acuff ("Ms. Acuff"), Mrs. Capps's daughter. (Doc. No. 60-2; Doc. No. 67 ¶ 1). Special Response Team ("SRT") officers Coon, Jason Rader ("Officer Rader") and Timothy Brewer ("Officer Brewer") (collectively, "Officers") were assigned to execute the arrest warrants on Mr. Capps at his home at 128 Summit Run Place in Hermitage, Tennessee. (Doc. No. 60-2; Doc. No. 67 ¶¶ 1-3). To prepare to serve the arrest warrants on Mr. Capps, Officer Coon was

assigned to cover Officers Rader and Brewer as they placed a breaching charge on Mr. Capps's front door. (Doc. No. 67 ¶ 2). Prior to executing the warrants, the Officers were briefed that Mr. Capps had held multiple individuals at gunpoint, threatened them, had access to firearms, and threatened to shoot responding police officers. (Id. ¶ 3; Doc. No. 60-4 at 44:16–46:23, 50:4–20; Doc. No. 60-6 at 21:8–22:4).

The Officers' body camera footage captured the three minutes in which the events leading to the instant suit occurred. That afternoon, the Officers drove toward Mr. Capps's home, parked on his street, and exited their police cruisers. (Doc. No. 60-7 at 14:08:09; Doc. No. 60-9 at 14:09:03). After roughly two minutes of surveilling the street and preparing to serve the warrants, the Officers moved closer to Mr. Capps's front door. (Doc. No. 60-7 at 14:10:00). Officer Coon approached Mr. Capps's front door with his gun drawn to the left of Officers Brewer and Rader (id. at 14:10:31), while Officer Rader crouched down to place the charge on the right side of Mr. Capps's door. (Id. at 14:10:45). Officer Brewer stood behind Officer Rader. (Doc. No. 60-5 at 52:9–16; Doc. No. 60-8 at 14:10:45).

Seconds later, Mr. Capps opened his front door. (Doc. No. 60-7 at 14:10:45). None of the body camera footage shows Mr. Capps's hands at the time he opened the door. (Doc. No. 60-7 at 14:10:46; Doc. No. 60-8 at 14:10:49; Doc. No. 60-9 at 14:09:55). Within seconds of Mr. Capps opening the door, Officer Coon immediately shouted: "Show me your hands!" (Doc. No. 60-7 at 14:10:46). Officer Brewer continued to hold breaching tape over his head. (Doc. No. 60-8 at 14:10:48). Officer Coon repeated: "Show me ...," and proceeded to fire four shots into Mr. Capps's home. (Doc. No. 60-7 at 14:10:47). The footage is unclear on whether Mr. Capps turned from the Officers before Officer Coon shot him. (Id.). Officers Rader and Brewer grabbed their firearms after Officer Coon shot Mr. Capps. (See Doc. No. 60-8 at 14:10:50; Doc. No. 60-9 at 14:09:53).

After firing into the home, Officer Coon opened the front door, and again yelled: "Show me your hands!" (Doc. No. 60-7 at 14:10:54). Officer Brewer yelled the same immediately after Officer Coon did. (Id. at 14:10:55). Officer Coon then said to one of his fellow officers: "Give me a squeeze," and entered the house. (Id. at 14:10:59). As Officer Coon walked into Mr. Capps's home, he again instructed: "Hands!" (Id. at 14:11:03). Officer Coon walked forward and to the right, proceeding to search Mr. Capps's home. (Id. at 14:11:04). Officers Brewer and Rader proceeded straight forward into the home, with their guns drawn. (Doc. No. 60-8 at 14:11:06). Officer Brewer then turned back toward Mr. Capps's front door, checked Mr. Capps's pulse, and placed his hands in zip ties. (Id. at 14:11:20). Officer Coon instructed: "Pistol should be right there. It was in his right hand. It should be a black revolver." (Doc. No. 60-7 at 14:11:25). Next to Mr. Capps's right foot sat a black revolver under a desk, on Mr. Capps's right side and near where he was shot. (Doc. No. 60-8 at 14:12:31; Doc. No. 67 ¶ 9; Doc. No. 60-11).

> After surveying the scene, Officer Jarvis's body worn camera ("BWC") captured Officer Rader's accounting of the event. (Doc. No. 66-F).³ On the BWC, an unidentified officer asked "[a]re all of our guys good?" (Id. at 0:15). Officer Rader responded: "I was placing the charge on the door, and I remember being down here, placed the charge on the door." (Id. at 0:14–10). While explaining, Officer Rader crouched down imitating putting the charge on Mr. Capps's door. (Id.). Officer Rader continued: "He opened it, I looked up, and he was holding a gun like this. Pointed right at Kendall."⁴ (Id. at 0:09–04). While describing this, Officer Rader imitated Mr. Capps holding a gun at waist height, pointed toward Officer Coon. (Id.). Officer Rader finished: "And that's how it all kicked off." (Id. at 0:02–01).

*Capps v. Metro. Gov't of Nashville-Davidson Cnty., Tenn.*, No. 3:23-CV-01141, -- F.Supp.3d --, 2025 WL 602952, at *1–2 (M.D. Tenn. Feb. 25, 2025) (Mem. Op. at 2–4, Doc. No. 97).

## I. Procedural History

Plaintiff has filed three complaints.¹ Beginning on October 27, 2023, Plaintiff pled that MNPD deployed its SWAT team to serve the warrants for Mr. Capps's arrest and that the team intended to set breaching charges on both the front and back doors before announcing its presence. (Compl. ¶¶ 111–112, Doc. No. 1.) She also pled that Mr. Capps was not pointing a gun at officers. (*Id.* ¶ 123.) She alleged a single Fourth Amendment violation for excessive force against Sgt. Coon and Metro Nashville. (*Id.* ¶¶ 143–146.)

Before Sgt. Coon responded, Metro Nashville moved to dismiss on municipal liability grounds. (First Mot. to Dismiss, Doc. No. 8.) To cure the deficiencies, Plaintiff moved to amend. (First Mot. to Amend, Doc. No. 17.) The Court granted the motion. (Order, Doc. No. 18.)

The second complaint repeated the allegations about using the SWAT team but doubled down about what happened at the door by claiming that Mr. Capps did not have a gun in his hand. (Am. Compl. ¶¶ 138–139, 149, Doc. No. 19.) Because factual allegations must be taken as true, Sgt. Coon and Metro Nashville could not move to dismiss the

---
¹ Plaintiff has referred to the multiple complaints as 1) complaint, 2) amended complaint, and 3) first amended complaint

complaint for failure to allege a constitutional violation. Sgt. Coon moved for summary judgment. (First Mot. Summ. J., Doc. No. 24.) The amendment, however, did not cure the deficiencies in the municipal liability claim against Metro Nashville, leading to another motion to dismiss. (Sec. Mot. to Dismiss, Doc. No. 35.)

Plaintiff implicitly acknowledged the deficiencies by trying to amend through her response to the second motion to dismiss. (Pl.'s Resp. to Def.'s Sec. Mot. to Dismiss at 11 n. 13, Doc. No. 45.) The Court advised Plaintiff that she needed to amend her complaint if she needed more facts to withstand the motion to dismiss. (Order, Doc. No. 46.) Heeding the Court's advice, Plaintiff moved to file her third complaint. (Sec. Mot. to Amend, Doc. No. 48.)

The third complaint, yet again, repeated the allegations about using the SWAT team and that Mr. Capps did not have a gun in his hand. (Third Am. Compl. ¶¶ 165–166, 176, Doc. No. 50.) When Plaintiff filed the third complaint, the Parties had agreed to a discovery schedule aimed at resolving Sgt. Coon's entitlement to qualified immunity. (ICMO at 1, Doc. No. 39.) Discovery targeted the events of January 5, 2023. (*Id.* at 5.)

After the targeted discovery ended, Sgt. Coon renewed his motion for summary judgment. (Sec. Mot. Summ. J., Doc. No. 58.) After a second case management conference, the Parties agreed to start written discovery on the "non-constitutional aspects of Plaintiff's municipal liability claim" because the constitutional aspects had been fully briefed. (Order at 4, Doc. No. 88.)

Then, the Court granted Sgt. Coon's motion for summary judgment. (Mem. Op., Doc. No. 97.) In granting the motion, the Court found "no evidentiary basis that Mr. Capps did not point his gun [at] any of the Officers." (*Id.* at 11-12.) Plaintiff had urged the Court to consider that officers had not announced their arrival before the use of force. (*Id.* at 18.)

The Court considered and rejected Plaintiff's contention that the failure to announce changed the threat level imposed on Sgt. Coon. (*Id.* at 18.)

The next day, the Parties appeared for a case management conference to discuss the Court's order for mediation and address any remaining issues. Plaintiff did not disclose that she would seek leave to amend her complaint to add a new claim.

As promised during the case management conference, Metro Nashville moved for summary judgment the next day. Metro Nashville argued that the Court's grant of summary judgment to Sgt. Coon doomed the claim against Metro Nashville. (Metro Mot. Summ. J., Doc. 100.) Plaintiff conceded the point by acknowledging that the Court's findings on the Fourth Amendment violation extend to Metro Nashville. (Pl.'s Resp. to Metro Mot. Summ. J., Doc. No. 104.)

Then, Plaintiff moved to file a fourth amended complaint. (Third Mot. to Amend, Doc. No. 107.) The proposed amendment would add a new Fourth Amendment claim. According to Plaintiff, MNPD officers violated the Fourth Amendment by not announcing their arrival to Mr. Capps before they entered his property. She also alleges that a Metro Nashville custom, policy, or practice caused the violation.

## LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." That said, the Rule "is not a *carte blanche*, allowing parties to amend their pleadings at any time." *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 873 (6th Cir. 1973). In deciding whether to grant a motion to amend, courts consider factors including undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).

An amendment is futile if it would not survive a motion to dismiss. *Greer v. Strange Honey Farm*, 114 F. 4th 605, 617 (6th Cir. 2024). To survive a motion to dismiss, a plaintiff must allege in a complaint "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court reiterated in *Ashcroft v. Iqbal*, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

## ARGUMENT

**I. Plaintiff's case has been resolved on the merits, and justice does not require an amendment that is untimely, in bad faith, prejudicial, and futile.**

Plaintiff's requested amendment improperly seeks a do-over. She has lost her case. None of the relevant Rule 15 factors favor granting the amendment. First, there is unexplained delay. Second, the circumstances and content of the motion indicate bad faith. Third, both Defendants are prejudiced by this litigation continuing. Fourth, the proposed Fourth Complaint would not withstand a motion to dismiss and therefore is futile.

### A. Untimely

In Plaintiff's own words, "many of the factual circumstances that support the count are already present in the Second Amended Complaint." (Third Mot. to Amend at 2, Doc. No. 107.) Indeed, most of the factual circumstances were also in the original complaint in 2023. For example, the original complaint alleged that 1) MNPD used a SWAT team; 2) the team intended to treat Mr. Capps as a barricade subject, even though he was not; 3) SWAT had Mr. Capps' phone number; 4) SWAT would not call Mr. Capps before setting breaching charges on the front and back door; and 5) the plan was to set breaching charges and then try to talk with Mr. Capps. (Compl. ¶¶ 108–112, Doc. No. 1.) The proposed amended

complaint adds that "two SWAT teams would begin the operation by cutting through Mr. Capps's back fence." (Proposed Third Am. Compl. ¶ 165, Doc. No. 106-1.)

But bodycam footage that was produced to Plaintiff in early 2024 revealed that her back fence had been cut through. (*See* Agreed Protective Order, Doc. No. 34.) Thus, she knew about these facts soon after she filed her lawsuit. Yet Plaintiff provides no explanation why she could not have included this claim earlier. Standing alone, her deficiency in explaining her actions warrants a finding that the proposed amendment is untimely.

The procedural history of this case also shows why the claim is untimely. This is not the first complaint or even the second or third. It is the fourth. Civil litigation should not be a game of whack-a-mole, but that is how Plaintiff is using this Court's resources. A dispositive motion has followed each proposed amendment. (Doc Nos. 8, 35, 58, 100.) After each dispositive motion, Plaintiff tried again. (Doc. Nos. 17, 48, 106.) The Court should find that the Plaintiff is out of chances.

Lastly, before Plaintiff's Motion to Amend, the Court granted summary judgment on the only claim in the operative complaint. The litigation had effectively concluded. And while Plaintiff tries to drive a wedge between Metro Nashville and Sgt. Coon by saying that the cases against each were on different tracks, that ignores the relationship between the claims. To succeed on her claim against Metro Nashville, Plaintiff had to establish a constitutional violation. She did not. As Plaintiff acknowledged, that dooms her pending municipal liability claim as well. (Pl.'s Resp. to Metro Mot. Summ. J., Doc. No. 104.) This Court decided the dispositive claim before it, leaving nothing left to adjudicate aside from the Court applying the same reasoning to the claim against Metro Nashville.

That feature also distinguishes this case from Plaintiff's cited case, *Carter v. Ford Motor Co.*, 561 F.3d 562 (6th Cir. 2009). Plaintiff contends that she could amend as late as

her summary judgment response. She then extrapolates that because she raised this claim in response to Metro Nashville's motion for summary judgment, she can revive this case. Not so. The pronouncements in *Carter* apply, unlike here, *before* summary judgment is decided. Also, *Carter* says nothing about this situation where liability hinges, in part, on the liability of another party whose claim has been resolved. Given these procedural and practical differences, *Carter* does not aid the Court's analysis.

Rather, the Court should consider *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299 (6th Cir. 2000). There, the plaintiff sought to amend the complaint to add a *Bivens* claim nine months after the operative complaint, one year after the original complaint, and after a grant of summary judgment. *Id.* at 306. Based on the late hour of the amendment, the Sixth Circuit found that the requested amendment would unfairly prejudice the defendants. *Id.* at 307.

The same is true here. Plaintiff filed this lawsuit sixteen months ago, and the operative complaint eleven months ago. The Court granted summary judgment a month ago. (Doc. Nos. 1, 50, 98.) Like the court in *Parry*, this Court should deny Plaintiff's motion to amend because of untimeliness, which would cause unfair prejudice. *See also CGH Transport, Inc. v. Quebecor World, Inc.*, 261 Fed. Appx. 817, 824–825 (6th Cir. 2008) (affirming district court's denial of a motion to amend because the defendant would be unfairly prejudiced when the amendment came after summary judgment had been granted and the plaintiff failed to justify the delay).

### B. Bad Faith

In evaluating bad faith, the Court considers the amendment's stated purpose and the history of the litigation. Start with the history. Plaintiff escaped her husband's drug- and alcohol-fueled kidnapping and asked the police for help. The police got a warrant and

developed a plan to serve the warrant that took Mr. Capps's crimes, demeanor, and access to firearms into account. That plan changed in an instant when Mr. Capps opened his door and pointed a gun at SWAT officers. TBI investigated, and the officers all relayed that Mr. Capps pointed a gun at them. Despite the TBI investigation being public, as well as bodycam excerpts from the officers at the door, plus multiple public statements from MNPD, Plaintiff filed a complaint asserting on "information and belief" that Mr. Capps did not have a gun at all. Even when discovery showed that there was no basis for that allegation, Plaintiff refused to change course. Not even this Court's summary judgment ruling seems to have dissuaded Plaintiff from pursuing this baseless allegation, given its inclusion in the proposed fourth complaint.

Next, consider Plaintiff's course of conduct. The case has been pending since October 2023. There have been three complaints and three motions for summary judgment. One of the amendments came after the Court admonished Plaintiff that she could not amend a complaint through a response to a motion to dismiss. (Order, Doc. No. 46.) Sgt. Coon renewed his motion for summary judgment in July 2024; it was fully briefed in August of that year. The depositions that Plaintiff relies on for "notice" of her new claim had been taken in the summer of 2024. The Parties then participated in a case management conference.

Plaintiff could have alerted the Court during a September 2024 case management conference that she had a new theory of liability. She did not. During the Court's case management conferences, Metro Nashville was candid about its intent to move for summary judgment if the Court granted Sgt. Coon's motion. A second opportunity for candor came in March 2025, but again, she stayed silent. Metro Nashville and Sgt. Coon expected this case to end with a decision on the merits of the Fourth Amendment excessive

force claim. Both the pleadings and Plaintiff's silence informed that expectation. It is the epitome of bad faith to try to swap theories at this stage.

Further, where a new theory is intended to undermine the Court's prior ruling—here, the ruling that the use of force was constitutional—there is "significant evidence of bad faith." *Ciccio*, 2021 WL 3291787, at *2. In *Ciccio*, the plaintiffs requested an amendment that would have undermined a magistrate judge's discovery ruling. *Id*. Amendments are not intended to be a procedural vehicle around adverse rulings. And because the plaintiffs sought to use an amendment to undermine a prior court order, the Court denied the motion based on bad faith. *Id*.

The same result is warranted here. In granting the motion for summary judgment, the Court considered and rejected Plaintiff's contention that the SWAT officers' failure to announce changed the threat level imposed on Sgt. Coon. (*Id*. at 18.) Yet Plaintiff asks the Court to permit an amendment that turns on a failure to announce proximately causing the use of deadly force. The Court need not address that same argument again, and it is bad faith by the Plaintiff to propose an amendment that asks the Court to do so.

Finally, the Court's inquiry into bad faith is "interrelated with inquiry into the excuse for delay." *Deutsche Bank Nat. Tr. Co. v. Quarles*, No. 11-CV-15498, 2013 WL 1213058, at *4 (E.D. Mich. Mar. 25, 2013) (citing Wright & Miller, Federal Practice and Procedure: Civil § 1487 p. 435 (1971)). Yet Plaintiff's motion provides *no explanation* for why she is adding this claim now, after three complaints and eight months after discovery into the events of January 5, 2023, closed. Instead, she tries to minimize her behavior by couching it as a "reframing." That is not what is happening here. Plaintiff is trying to spring a new legal theory that could have been pled before, without any justification for the delay. This is bad faith. *See Bigger v. Grubbs*, No. 1:24-CV-10841, 2025 WL 958158, *3 (E.D. Mich. March 31, 2025) (denying a motion to amend because the facts supported undue

delay, at best, or bad faith, at worst, when the facts supporting the amendment had been known since the incident).

### C. Prejudice

Sgt. Coon will be prejudiced by the proposed amendment. The Court's grant of summary judgment is not final. The purpose of qualified immunity is to resolve claims against government actors quickly. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court has done that to date. If, however, the amendment is granted, Sgt. Coon will be held in limbo while the municipal claim is litigated. That will take years.

"[T]he time and expense of continued litigation on a new theory, with the possibility of additional discovery would be manifestly unfair and unduly prejudicial." *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973). Municipal liability discovery is long, time-consuming, and expensive. Despite Plaintiff having agreed, shortly before the Court's summary judgment ruling, to resubmit streamlined discovery requests, Plaintiff inexplicably notes that Metro Nashville has not yet responded to her prematurely served discovery requests. That matters because it demonstrates Plaintiff's intent to drag Metro Nashville back into vast discovery.

When a litigant proceeds under one theory, and loses, they do not get a do-over. *Id.* Plaintiff's request to do just that, if granted, will prejudice both Metro Nashville and Sgt. Coon. The amendment should be denied.

### D. Futility

Plaintiff's proposed amendment lacks legal foundation. The SWAT officers developed a reasonable tactical plan for serving the felony warrants to arrest Mr. Capps, and Plaintiff's new theory does not directly attack the wisdom of that plan. The warrants authorized officers to approach and ultimately enter Mr. Capps's home. Fourth Amendment jurisprudence only requires announcement before entry into the home itself. Yet Plaintiff

seeks to create a new rule that the officers "were obligated to announce themselves to Mr. Capps" before *approaching* his home. (Mot. to Amend at 8, Doc. No. 107; Proposed Am. Compl. ¶ 215, Doc. No. 106-1.) That is not the law.

> The Fourth Amendment states:
>
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Amendment requires a warrant to enter a person's home absent exigent circumstances. *Payton v. New York*, 445 U.S. 573, 602–03 (1980). A warrant bestows on officers the right to enter the property. *Bills v. Aseltine*, 958 F.2d 697, 704 (6th Cir. 1992). And because the touchstone of the Amendment is reasonableness, a warrant must be executed reasonably. *U.S. v. Ramirez*, 523 U.S. 65, 71 (1998). At times, that will require officers to "knock and announce" prior to entering the home. *Wilson v. Ark.*, 514 U.S. 927, 931 (1995). Undersigned counsel has identified no authority extending the "knock and announce" requirement to entry into a person's curtilage.

But even the "knock and announce" requirement is not absolute. *Id.* at 934. Legitimate law enforcement interests may make announcement unreasonable. *Id.* Thus, the requirement to announce, "would yield under circumstances presenting a threat of physical violence." *Id.* at 936. Officers "may take such reasonable action as is necessary to protect themselves during the execution of the warrant." *Bills*, 958 F.2d at 704. Against that backdrop, Plaintiff's proposed new rule falls flat. Because the proposed amendment would be futile, the motion to amend should be denied.

### 1. The officers' actions were objectively reasonable.

Two arrest warrants authorized the officers to approach Mr. Capps's home. *Payton*, 445 U.S. at 603. Those warrants allowed officers to step onto Mr. Capps's property and into his home, if necessary. *Id.* Precedent required officers to make their presence known *before* they attempted entry to the home, if they could safely do so. *Wilson*, 514 U.S. at 931. It did not require officers to alert Mr. Capps to their presence before stepping onto his curtilage.

Despite this lack of obligation under the warrant's terms, Plaintiff ignores that MNPD officers intended to announce their presence when it was safe to do so. Mr. Capps's actions prevented that from occurring. For Plaintiff's theory to hold water, the Court would have to accept that the Fourth Amendment requires officers to announce their presence from outside the curtilage of a home when they reasonably anticipate a violent interaction. Not surprisingly, Plaintiff cannot find any case that endorses that nonsensical theory.

The circumstances of Mr. Capps's crimes justified the tactics. Fueled by booze and pills, he threatened the members of his household at gunpoint, had access to multiple firearms, had access to surveillance equipment, and threatened to shoot police officers if they responded. (Response to SUMF No. 3, Doc. No. 67.) Recognizing the danger Mr. Capps created, MNPD officers devised a tactical plan that accounted for multiple contingencies. Officers would approach from the front and back to place energetic breaching charges on the doors. (Frost Report, at 1, Doc. No. 106-2.) The officers who placed the charges would then retreat, without making entry. (*Id.*) The "goal was to not make contact with Mr. Capps or anybody in the house." (Coon Dep. at 7, Doc. No. 106-5.)[2] After the breaching team reached a position of safety, announcements would begin. (Frost Report at 1, Doc. No. 106-2.) If Mr. Capps complied with the announcements and directives, no further show of force would be necessary. If he did not, the SWAT team had a tactic in place to enter the home.

---

[2] The testimony appears on page 109 of the entire deposition, but on page 7 of the exhibit.

It is inherently reasonable for the police to develop a plan that protects them and gives them options moving forward. *See Holland ex rel. Overdoff v. Harrington*, 268 F.3d 1179, 1190–1192 (10th Cir. 2001) (refusing to find a Fourth Amendment violation when the decision to use a SWAT team was based on the reasonable possibility of a conflict). Plaintiff does not—indeed cannot—contend otherwise.

### 2. No case supports Plaintiff's proposed rule.

Plaintiff cites no authority requiring officers to announce themselves before entering the curtilage of a home, instead referencing irrelevant out-of-circuit cases without explaining how they apply.

According to Plaintiff, the first two cases—*Terebesi v. Torreso*, 764 F.3d 217 (2d Cir. 2014) and *U.S. v. Morris*, 436 F.3d 1045 (8th Cir. 2006)—show that a breach of something other than a door is an entry that requires the police to knock and announce. (Resp. at 8.) But in *Terebesi* and *Morris*, officers "entered" something connected to the home: in *Terebesi*, a window, 764 F.3d at 243, and in *Morris*, a screen door, 436 F.3d at 1048. That matters because an announcement must precede entry. Breaching an attached door or throwing something through a window into a home constitutes an entry into the home.

The same is not true of entering a yard through a fence. Plaintiff cites no case for the proposition that officers—armed with a warrant—cannot cut through a back fence to take an armed and violent suspect into custody. Nor does she cite any case to show that officers may not place breaching charges on the outside of a door, without opening or entering anything. Thus, Plaintiff's cases do not establish that her proposed amendment pleads a constitutional violation.

She next relies on *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997), and *Estate of Starks v. Enyert*, 5 F.3d 230 (7th Cir. 1993), for the proposition that officers may be liable when they create the circumstances that lead to the use of deadly force. (Pl.'s Mot. to

Amend at 8, Doc. No. 107.) Notably, the Sixth Circuit rejected the *Allen* court's analysis as incompatible with Sixth Circuit precedent in *Whitlow v. City of Lousiville*, 39 Fed. Appx. 297, *306 (6th Cir. 2002). The Court can therefore ignore the *Allen* case. *Allen* is also distinguishable because the officers' actions here predated the use of force by seconds, not minutes.

*Estate of Starks* is also distinguishable. There, the court emphasized that the underlying crime was not violent, and that the decedent never used a weapon against an officer until the officer stepped in front of a moving car. 5 F.3d at 233. Here, MNPD officers had warrants for two violent crimes: aggravated kidnapping and aggravated assault. And Mr. Capps, not Sgt. Coon, created the dangerous situation by answering the door with a gun pointed at police officers. Given the Sixth Circuit's express rejection of the principles in *Allen* and the factual differences, these cases do not salvage Plaintiff's claim.

Plaintiff's final two cases analyze the decision to shoot, further confirming the amendment's true purpose of undermining this Court's prior order. In *Betton v. Belue*, 942 F.3d 184 (4th Cir. 2019), officers used a battering ram to enter the home without knocking or announcing themselves. *Id.* at 188. After hearing the break-in from the back of the house, the plaintiff grabbed his gun and ran into the living room with his gun pointed down. *Id.* at 189. In denying summary judgment to the defendant officers, the court determined that the plaintiff did not pose a threat because he never pulled his gun. *Id.* at 192.

A similar factual scenario was present in *Cooper v. Sheehan*, 735 F.3d 153 (4th Cir. 2013). The officers knocked on a window; the plaintiff called out for the knocker to identify themselves; the police did not; and then the plaintiff held his gun muzzle down while he investigated. *Id.* at 156. Because the plaintiff was not pointing a gun, the court found that

he was not a threat. *Id.* The opposite is true of Capps, as this Court has determined: "[T]he undisputed facts demonstrate that when Mr. Capps opened his front door just a few feet from the Officers, he had a gun pointed at a ninety-degree angle toward them." (Mem. Op. at 11, Doc. No. 97.) These cases do not help Plaintiff either.

At base, no case recognizes the right Plaintiff claims here. There simply is no constitutional obligation on officers to announce their presence when they cross a property line. Such a rule would require officers to announce their presence before assuming positions to protect themselves when serving felony warrants on an armed man who threatened to kill police officers. Because Plaintiff's amendment is based on an imaginary right, the amendment would be futile and should be denied.

## CONCLUSION

This Court achieved a "just, speedy, and inexpensive determination" in this case, adhering to the guiding principle of the Rules. Fed. R. Civ. P. 1. Now, Plaintiff seeks to file her fourth complaint based on facts known to her for more than a year, with no justification for the delay. Plaintiff's assertion that Metro Nashville would suffer no prejudice from this amendment ignores the extensive public resources that the city's legal department must devote to defending a case of this magnitude. "[T]he time and expense of continued litigation on a new theory, with the possibility of additional discovery would be manifestly unfair and unduly prejudicial." *Troxel Mfg. Co.*, 489 F.2d at 971. Furthermore, Plaintiff disregards the prejudice to Sgt. Coon in delaying final judgment. When a litigant proceeds under one theory and loses, justice dictates that they are not entitled to a do-over. *Id.* Plaintiff's motion to amend should be denied.

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ (#09949)
DIRECTOR OF LAW

/s/ *Melissa Roberge*
MELISSA ROBERGE (#26230)
  SENIOR COUNSEL
John W. Ayers (#37494)
  ASSISTANT METROPOLITAN ATTORNEY
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
melissa.roberge@nashville.gov
*Counsel for Ashley Coon and the Metropolitan Government*

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been delivered via the CM/ECF electronic filing system to the following on the 10th day of April 2025:

| | |
|---|---|
| Kyle Mothershead | Bryan Moseley |
| 7000 Executive Center Drive, Suite 240 | 237 Castlewood Drive, Suite D |
| Brentwood, TN 37027 | Murfreesboro, TN 37129 |
| (615) 891-3901 | (615) 254-0140 |
| kyle@relentlesslaw.com | bryan.moseley@moseleylawfirm.com |

/s/ *Melissa Roberge*
Melissa Roberge